IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION
CLEVELAND, OHIO

JOHN DOE, A MINOR, by and through his
parent and next friend, JANE DOE

and

JANE DOE, Individually

        Plaintiffs

v.

BRECKSVILLE-BROADVIEW HEIGHTS CITY
SCHOOL DISTRICT BOARD OF EDUCATION

and

JEFFREY D. HARRISON, Individually and as
Current Superintendent of Brecksville-
Broadview Heights City School District

and

JOELLE MAGYAR, Individually and as Former
Superintendent of Brecksville-Broadview
Heights City School District

and

BRIAN WYCUFF, Individually and as
Assistant Superintendent of Brecksville-
Broadview Heights City School District

and

JOSHUA HANES, Individually and as Pupil
Services Coordinator of Brecksville-
Broadview Heights City School District

and

JUDGE

CASE NO. 1:26-CV-01014

**COMPLAINT**
Jury Demand Endorsed Hereon

COLLEEN TOTH, Individually and as a
Principal of the Brecksville-Broadview
Heights City School District

and

KIMBERLY DIROCCO, Individually and as
Supervisor of the Brecksville-Broadview
Heights City School District Nursing
Department

and

DANIELLE KOVACS, Individually and as a
former Employee of Brecksville-Broadview
Heights City School District Board of
Education

Defendants

Plaintiffs, by and through counsel, submit the following as their Complaint:

## GENERAL ALLEGATIONS

**The Parties**

1. Plaintiff Jane Doe is the natural parent and mother of Plaintiff John Doe, who is a minor and student currently residing in the Brecksville-Broadview Heights City School District ("BBHCSD") and attending a school operated by Defendant Brecksville-Broadview Heights City School District Board of Education ("BOE").

2. Plaintiffs have filed under separate cover their motion to proceed under pseudonyms and herein incorporate said motion.

3. At all relevant times, Defendant BOE is, and has been, a political subdivision of Ohio with its administrative office and principal place of business located at 6638 Mill Road, Brecksville, Ohio 44141. Defendant BOE has received federal and state funding for the provision of public education.

2

4.      From 2023 to present, Defendant BOE employed Defendant Jeffery D. Harrison as its Superintendent of the BBHCSD. Defendant Harrison was responsible for the implementation of all official governmental laws, policies, regulations, and procedures. Plaintiffs bring this action against Defendant Harrison in both his official and individual capacity.

5.      From 2016 to 2023, Defendant BOE employed Defendant Joelle Magyar as its Superintendent of the BBHCSD. Defendant Magyar was responsible for the implementation of all official governmental laws, policies, regulations, and procedures. Plaintiffs bring this action against Defendant Magyar in both her official and individual capacity.

6.      At all times relevant, Defendant BOE employed Defendant Brian Wycuff as its Assistant Superintendent and/or Director of Human Resources and Title IX Coordinator. Defendant Wycuff was responsible for the implementation of all official governmental laws, policies, regulations, and procedures. Plaintiffs bring this action against Defendant Wycuff in both his official and individual capacity.

7.      At all times relevant herein, Defendant BOE employed Defendant Joshua Hanes as its Pupil Services Coordinator (Middle and High School). Defendant Hanes was responsible for the implementation of all official governmental laws, policies, regulations, and procedures. Plaintiffs bring this action against Defendant Hanes in both his official and individual capacity.

8.      At all times relevant herein, Defendant BOE employed Defendant Colleen Toth  as the  Principal of the Brecksville Broadview Heights Primary School (the "Elementary School") within the BBHCSD.  As the Principal of the building to which Defendant Kovacs was assigned, Toth was a  direct superior of Kovacs.  Toth was responsible for the implementation of all official governmental laws, policies, regulations, and procedures. Plaintiffs bring this action against Toth in both her official and individual capacity.

9. At all times relevant herein, Defendant BOE employed Defendant Kimberly Dirocco as the Health Care Coordinator of the BBHCSD. Dirocco also was a direct superior of Defendant Kovacs. Dirocco was responsible for the implementation of all official governmental laws, policies, regulations, and procedures. Plaintiffs bring this action against Defendant Dirocco in both her official and her individual capacities.

10. At all times relevant herein, Defendant BOE employed Defendant Danielle Kovacs as a Health Aide. Kovacs was responsible for the implementation of all official governmental laws, policies, regulations, and procedures. Plaintiffs bring this action against Defendant Kovacs in both her official and individual capacity.

11. At all times relevant hereto each of the Defendants was acting under the color of state law.

**General Overview and Allegations**

12. This Complaint stems from the egregious, malicious, reckless, wanton and bad faith conduct not only of Defendant Kovacs but also Defendants Harrison, Magyar, Wycuff, Hanes, Toth, and Dirocco, all of whom (1) were recklessly ignorant to the ongoing actions of Defendant Kovacs and (2) left none or grossly inadequate safeguards in place to prevent her actions and protect the children whose care had been entrusted to them.

13. Starting as early as Fall of the 2021 school year (and perhaps even earlier), Kovacs, while assigned and on duty as a Health Aide, engaged in a medication theft spree from multiple elementary students ages 5 to 12. The medications she was pilfering had been prescribed for the exclusive use of her child-victims and were essential for each victim's physical, emotional, and educational well-being. Kovacs's ongoing theft spree dramatically affected the children's ability to perform at school and severely damaged their physical, emotional, and psychological health, confidence, trust, and self-esteem.

4

14.     At all times relevant, the minor Plaintiff John Doe, a student at the Elementary School, was under professional medical care that required him to be administered prescription medication during school hours.

**The Health Aide Position and Dispensing of Medication**

15.     The BBHCSD Nursing Department is organized in a hierarchical fashion with Health Care Coordinator Dirocco having supervisory authority over her subordinate Health Aides.

16.     The Principal of each respective building to which Health Aides had been assigned also maintained a degree of control and responsibility over the Health Aides as the aides carried out their duties.

17.      Defendant Toth, Principal of the Elementary School, was dangerously (or recklessly) unfamiliar and/or willfully ignorant of the BBHCSD's policies regarding the administration of prescription medications to students during school hours.

18.     The BBHCSD employed Health Aides who were Licensed Practical Nurses ("LPNs") as well as individuals without any type of nursing training or certifications such as Defendant Kovacs.

19.     Health Aides had, among other duties, the following essential functions:

   a.   Dispensing medication following BBHCSD guidelines;

   b.   Ensuring the safety of students;

   c.   Keeping daily clinic logs of students needing health assistance;

   d.   Performing hearing ,vision, and scoliosis screens for their assigned building.

20.     The Health Aides, including Kovacs, reported directly to Health Care Coordinator Dirocco.  Dirocco in turn, reported to the Director of Pupil Services, a position held by multiple individuals over the course of the years during which the events that gave rise to this action took place.

**Defendant Kovacs Employment**

21.     On February 9, 2019, Kovacs applied to the BBHCSD for the position of Food Service Worker, Substitute Secretary, and Substitute Food Service Worker.

22.     At the time of her employment application, Defendant Kovacs only had previous employment experience in food service and retail settings.

23.     Upon information and belief, at no time prior to her application did Defendant Kovacs have any experience with, or receive training in, the handling and administration of prescription medications. Nor had she ever engaged in any other type of medical related occupation.

24.     Kovacs began her employment at BBHCSD on February 22, 2019 as a Substitute Food Service Worker.

25.     Sometime before, but no later than, January 2021, Defendant Kovacs transitioned into the position of "Health Aide" with BBHCSD.

26.     In her position as a Health Aide, Defendant Kovacs was responsible for, among other duties, receiving prescription medication from parents, tracking and recording the exact amount of the medications received, administering medications to Plaintiff John Doe as well as other students, and disposing of medications if necessary.

**Commencement of the Medication Theft Spree**

27.     Starting as early as October 20, 2020 (and perhaps even earlier), around the time that she had transitioned to the role of Health Aide, Defendant Kovacs began her prescription medication theft spree during which she not only stole children's medications but also, to conceal her thefts, engaged in an  ongoing coverup that involved: (1) lying to students, parents, and her superiors and co-workers; and (2) the intentional falsification and/or alteration of  children's medication logs.

6

28.     Kovacs put forth multiple falsehoods to explain the "missing" medication such as: the child victim had knocked the medications out of her hand; she had accidently dropped the pills on the floor and therefore had found it necessary to dispose of them.  On some occasions she falsely blamed the students accusing them of having "spit it out" or having "dropped one."  At times she recklessly lied that she had administered the medication to the child when in fact she had not.

29.     On numerous occasions while Kovacs served as a Health Aide for the BBHCSD, the attendance records and medication administration records of multiple students indicate that medication was "administered" on days when the student was absent from school.

30.     On occasion Kovacs used "treats" such as candy and prizes to gain the trust of the children while she simultaneously stole their medication.

31.     BBHCSD's written, published, and distributed policy required parents to deliver their child's prescription medication to the school in "its original container; labeled with the date, if a prescription; the student's name; and exact dosage."

32.     However, Defendant Kovacs regularly told the parents that they could deliver pills in plastic sandwich baggies or Tupperware containers.

33.     Similarly, when parents were dropping off medication for their children, BBHCSD personnel regularly denied them access to the clinic thereby depriving them of the opportunity to perform the pill count and verify compliance with BBHCSD medication policy more fully set forth below.

34.     Plaintiff Jane Doe was one of the parents who was denied access to the clinic and deprived of the opportunity to perform pill counts and verifications.

35. Plaintiff John Doe was one of the students whose medication was stolen and given other medications as specifically outlined below.

**Defendant Kovacs Replaced Medications with Anti-Depressants, Antihistamines, and Other "Supplements."**

36. In terms of child safety, the most egregious of Kovacs's actions was her administering a substituted look-alike medication as replacement for the stolen medication in furtherance of her scheme to cover up her theft spree.

37. On at least two occasions, in a highly risky attempt to conceal her theft of Plaintiff John Doe's methylphenidate, Kovacs surreptitiously substituted the prescription drug escitalopram for John Doe to take. Escitalopram, commonly known as Lexapro, is an anti-depressant use to treat major depressive disorders and generalized anxiety disorders.

38. The escitalopram tablets resembled the stolen methylphenidate tablets that had been prescribed for John Doe to treat his Attention Deficit Hyperactivity Disorder ("ADHD").

39. Escitalopram is a Selective Serotonin Reuptake Inhibitor ("SSRI") that acts to increase the levels of serotonin in the body and can have an increased risk of multiple dangerous side effects in children – especially the side effect suicidal ideation.

40. Kovacs's actions were grossly negligent, wanton and reckless and taken with complete disregard for the potential drug interactions with other medications that Plaintiff and the other children may have been taking at home as well as the physical damage done to a child's body receiving such medications.

41. Also, in place of the stolen amphetamines, which physicians frequently prescribe for ADHD in children to help them remain alert and focused, Kovacs substituted antihistamines, causing the children to experience negative reactions including drowsiness and inability to pay attention

8

42. Finally, in February of 2024, a long overdue audit of the student medications in BBHCSD's custody, performed by Health Coordinator Dirocco, revealed that Kovacs had deceptively mixed the ill-suited, look-alike substitute pills together with the properly prescribed medication in the original prescription bottle.

**BBHCSD Policies or Lack Thereof and Failure to Recognize/Identify the Problem**

43. BBHCSD lacked the necessary protocols, methods, and other safeguards to prevent and/or otherwise readily reveal Defendant Kovacs's egregious actions. Moreover, Kovacs's supervisors, district level employees, and the BOE as a whole, as was their policy, custom, and practice, completely ignored whatever grossly deficient protocols, methods and safeguards that were in place.

44. BBHCSD neither established nor implemented any policy or procedure that would (1) periodically, systematically, and meaningfully provide for the counting and/or auditing of the medications held by the school or (2) require throughout the school year the utilization of a regularly updated log documenting medication distributions (identifying the medication, the quantity administered, the student receiving the medication, the person administering the medication and any witnesses thereto).

45. In fact, at the end of the 2022-2023 school year, before the events giving rise to this action, Defendant Kovacs was a health aide at the high school. At that time it was found that there were at least 124 unaccounted for medications involving at least two different students. Because BBHCSD had no established policies or procedures for auditing the medication logs, neither Health Coordinator Dirocco, who knew about this discrepancy, nor any other person in authority at the BBHCSD, investigated and/or took steps to understand how and why these medications were unaccounted for. Despite the BBHCSD having notice of a potentially dangerous situation for its

students, they shockingly made Kovacs the elementary health aide, for the 2023-2024 school year, where she would be responsible for administering medications to minor children.

46.     Prior to November 2023, the only method used by BBHCSD to track the count and disbursement of medications was a single sided sheet of paper with a grid of 5 columns for: (1) the date received: (2) date given: (3) time administered; (4) initials of the Health Aide administering the medication; and (5) the quantity remaining.  Completion of this "controlled substance form" was a task of the Health Aide.

47.     Documents produced by BBHCSD to Plaintiffs prior to litigation reveal that there was a second version of a medication tracker that BBHCSD personnel would use which was different from the "controlled substance form" referenced above.

48.     Part of BBHCSD "procedure" was that when a student's medication is received at the school, it should be counted by two people who should then sign off on the log that both parties agree to the count.

49.     The limited medication logs produced by BBHCSD pursuant to Plaintiffs' request reveal that on a regular basis, medications were dropped off and recorded without the requisite two person sign off.

50.     In November of 2023, BBHCSD changed the medication logbook documentation and medication tracking procedures.

51.     Just as BBHCSD permitted its Health Aides to disburse medications, it also entrusted them to dispose of medications, when necessary.  According to BBHCSD policy, Health Aides were to place medication subject to disposal into substances that are not palatable such as coffee grounds, dirt, or cat litter.

52. Despite numerous prior instances of misconduct, only in approximately December of 2023, after Kovacs's unusual disposal of 25 prescription pills into a baggie filled with coffee grounds, did Health Coordinator Dirocco begin to suspect Kovacs of some improper conduct – potentially three years after her theft spree began. However, when Elementary School Principal Toth reported this unusual medication disposal to Dirocco, she further told Dirocco, the BBHCSD Health Coordinator, not to come to the Elementary School to verify that the pills in the bag of coffee grounds were in fact that student's pills. Rather, Principal Toth took it upon herself to perform this verification. Unfortunately, due to her unfamiliarity with BBHCSD medication policies and her overall lack of medical training, Principal Toth was unable to (1) confirm the size, shape, color, and markings of those pills; and (2) verify that they were in fact the student's allegedly dropped prescription pills as opposed to substitutes placed there by Kovacs.

53. Thus, not having had the opportunity to visually inspect the alleged and unusual disposed of 25 pills and despite having actual knowledge that at least 124 doses of student medications were missing when Kovacs was the high school health aide in the 2022-2023 school year, Dirocco put aside her suspicions and took no steps to audit the medication tracking logs or verify that all medication received from the parents was accounted for and that each child was receiving the correct dosage of the correct medication.

54. If Dirocco, who was an RN knowledgeable about medication, had inspected the baggie, she undoubtedly would have recognized that the pills in the baggie were not the prescription pills claimed to have been dropped. Such a discovery would have required her, at a much earlier point in time before any additional harm occurred, to conduct the audit that ultimately stopped Kovacs's dangerous and life-threatening crime spree two months later in February of 2024.

55.     BBHCSD did not have a policy or procedure that would periodically provide for the counting and/or auditing of (1) the medications received by the school and (2) the log of medications actually disbursed to the students.  Had such a policy been in place, the scale and scope of Kovacs's pill theft spree would have been readily recognizable at a point in time far earlier than it was and would likely have never occurred.

56.     An audit of the medications received would have (1) revealed the total disregard of the two person sign off policy, (2) identified that the children's medication bottles contained improperly substituted and potentially dangerous pills that were incompatibly different from, but mixed in with, the medication that had been prescribed; and (3) the number of "dropped" pill episodes involving Kovacs was far greater than one would expect with the routine handling and disbursement of medication.

57.     At all times, the medications and prescriptions that were in the possession of BBHCSD remained the property of Plaintiffs and they alone were the final decision makers on how any dropped or spilled medications were to be handled.

58.     BBHCSD policies across the board with respect to the handling of prescription medications were dangerous, wholly inadequate, and lacked any true safeguards against misconduct that has resulted in the lives of several vulnerable children, including Plaintiff John Doe, being affected with potential physical and psychological effects later in life.

59.     BBHCSD's conduct, or lack thereof, demonstrates its actual or constructive knowledge that Defendant Kovacs was a risk to students, yet it consciously disregarded that risk by (1) allowing her to continue her employment and handle students' medications and (2) failing to audit and/or verify the medication logs.

## JURISDICTION AND VENUE

60.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 insofar as this Complaint raises issues under the Fourth and Fourteenth Amendments to the United States Constitution.

61.     Plaintiffs bring these claims by and through 42 U.S.C. §1983 and 28 U.S.C. §1343.

62.     This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. §1367 because the state law claims asserted by Plaintiffs form part of the same case or controversy as the constitutional/federal claims.

63.     Venue is proper in the Northern District of Ohio, Eastern Division, under 18 U.S.C. § 1965 and 28 U.S.C. 1391(c), as the claims arise in this district and all Defendants reside or maintain a principal place of business within the district.

## CLAIM ONE
Violation of Substantive Due Process
14th Amendment of the U.S. Constitution
(*via* 42 U.S.C. § 1983)
Against All Defendants

64.     Plaintiffs incorporate and reaver all allegations contained in each of the previous paragraphs as though fully rewritten herein.

65.     The Fourteenth Amendment to the United States Constitution gives rise to Plaintiff John Doe's right to personal security and bodily integrity while attending the Elementary School. *Doe v. Claiborne Cty., Tenn.*, 103 F.3d 495, 506 (6th Cir. 1996).

66.     The Fourteenth Amendment further gives rise to Plaintiff John Doe's right to possess and control his own person free from all restraint or interference of others. *Doe v. Claiborne Cty., Tenn.*, 103 F.3d 495, 506 (6th Cir. 1996).

13

67.     The actions of Defendants described more fully in Paragraphs 12-59, violated Plaintiff John Doe's Fourteenth Amendment substantive due process rights in a negligent and reckless manner and in a way that shocks the conscience.

68.     As a direct and proximate result of Defendants' violation of Plaintiff John Doe's constitutional rights, John Doe suffered damages of a personal, pecuniary, and permanent nature, including, but not limited to, serious bodily injuries, pain and suffering, mental and psychological anguish, medical expenses now and into the future, loss of enjoyment of life, and other damages to be proven at the trial of this matter.

**CLAIM TWO**
Violation of Right to Bodily Integrity
4th and 14th Amendment of the U.S. Constitution
(*via* 42 U.S.C. § 1983)
Against All Defendants

69.     Plaintiffs incorporate and reaver all allegations contained in each of the previous paragraphs as though fully rewritten herein.

70.     At all times relevant herein Plaintiff John Doe had a right to bodily integrity which is protected by the Fourth Amendment and the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

71.     Defendant Kovacs's theft of Plaintiffs' necessary medication and her subsequent replacement of that medication with potentially dangerous anti-depressants or other substances constitutes a deprivation of Plaintiff John Doe's right to bodily integrity protected by the Fourth and Fourteenth Amendments to the United States Constitution.

72.     BBHCSD, by and through its authorized officials, including Defendants Harrison, Magyar, Toth and Dirocco, described more fully in paragraphs 12-59, failed to adhere to its adopted custom and policies regarding the receipt, handling, storage, disbursement, and

14

destruction of medications and/or failed to put in place proper policies and procedures with respect to the same.

73.     The actions and inactions of Defendants described above in this Claim Two, directly and proximately caused the deprivation of Plaintiffs' rights.

74.     The actions and inactions of Defendants described above in this Claim Two, constituted actions and omissions that manifest deliberate and reckless indifference to the rights of Plaintiffs.

75.     The BOE, Principal Toth, and Nurse Dirocco had an affirmative duty to protect their students, including Plaintiff John Doe, from harm when there existed a state-created danger; a violation of this duty under these circumstances is actionable under 42 U.S.C. §1983.

76.     The Defendants' actions present a degree of culpability that shocks the conscience given that they are first and foremost responsible for the wellbeing of the minor students entrusted to their care by the community they serve.

77.     As a direct and proximate result of Defendants' violation of, and indifference to, Plaintiff John Doe's constitutional rights, John Doe suffered damages of a personal, pecuniary, and permanent nature, including, but not limited to, serious bodily injuries, pain and suffering, mental anguish, emotional and psychological trauma, medical expenses now and into the future, loss of enjoyment of life, and other damages to be proven at the trial of this matter.

78.     As a result of the deprivation of Plaintiff John Doe's constitutional rights and resulting emotional and psychological trauma, both past and into the future, Plaintiffs are seeking special damages in an amount to be proven at trial.

## CLAIM THREE
Violation of 14th Amendment Equal Protection Due to Official Policies, Customs, and Practices
of Defendant BOE
(via 42 U.S.C. § 1983)
Against Defendant BOE

79.     Plaintiffs incorporate and reaver all allegations contained in each of the previous paragraphs as though fully rewritten herein.

80.     Defendant BOE is constitutionally and statutorily required to provide equal education opportunities to all children under the Fourteenth Amendment, the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400, et seq. , Section 504 of the Rehabilitation Act of 1973 ("Section 304") 29 U.S.C. § 794, and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, et seq.

81.     The actions and/or inactions as detailed more fully in paragraphs 12-59 of this Complaint, constitute policies, practices, or customs that violated Plaintiff John Doe's constitutional and statutory rights to equal education opportunities.

82.     Plaintiff John Doe, a minor, was a vulnerable student who had a medical condition and disability at all times relevant to this Complaint.

83.     Plaintiff John Doe's medical condition and disability was managed by a licensed physician who prescribed medications which directly improved John Doe's ability to learn, participate, and otherwise function on a daily basis while at home and school.

84.     Depriving Plaintiff John Doe of his needed medications resulted in John Doe being unable to properly learn, participate, and otherwise enjoy the same right to education that other students received.

85.     Defendant BOE's policies, customs, and practices resulted in its failure to implement proper policy safeguards, and to properly train, correct, and/or supervise its employees,

16

all of which proximately and directed violated Plaintiff John Doe's constitutional and statutory rights to equal education opportunities.

86.     As a result of the deprivation of Plaintiff John Doe's constitutional and statutory rights to equal education, John Doe suffered and continues to suffer severe emotional and psychological trauma.  John Doe is entitled to recover for all damages proximately resulting from the deprivation of his constitutional rights as detailed above.

**CLAIM FOUR**
Supervisory Liability
(via 42 U.S.C. § 1983)
Against Defendants BOE, Harrison, Magyar, Toth, and Dirocco

87.     Plaintiffs incorporate and reaver all allegations contained in each of the previous paragraphs as though fully rewritten herein.

88.     Elementary School Principal Toth and Health Coordinator Dirocco, acting as supervisors of Health Aide Kovacs had actual and/or constructive knowledge that Kovacs was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to Plaintiff John Doe.

89.     Defendants BOE, Current Superintendent Harrison, Former Superintendent Magyar, Toth, and Dirocco failed to take any reasonable steps to require regular medication audits which would have stopped and/or prevented Defendant Kovacs from her thefts and other actions.

90.     Defendants BOE, Harrison, Magyar, Toth, and Dirocco's response (or lack thereof) was so inadequate as to demonstrate deliberate indifference to or tacit authorization of the reckless and offensive actions of Defendant Kovacs.

91.     There was an affirmative causal link between Defendants' acts and omissions and the particular injury suffered by the Plaintiff John Doe.

17

92.     As a result of the deprivation of Plaintiff John Doe's constitutional rights, John Doe suffered and continues to suffer severe emotional and psychological trauma. John Doe is entitled to recover for all damages proximately resulting from the deprivation of his constitutional rights as detailed above.

**CLAIM FIVE**
Negligence
Ohio Common Law
Against All Defendants

93.     Plaintiffs incorporate and reaver all allegations contained in each of the previous paragraphs as though fully rewritten herein.

94.     Plaintiff Jane Doe delivered her minor child John Doe's prescribed ADHD medication, classified as a controlled substance under state and federal law, to BBHCSD for the limited purpose of secure custodial storage and administration during school hours by Defendants.

95.     When Defendants accepted possession of the controlled substance medication, it undertook a voluntary custodial function identical to that performed by private schools, daycares, camps, and private caregivers. This custodial function is not mandated by statute, is not uniquely governmental, and arises solely from parental delegation, not sovereign authority.

96.     Because BBHCSD and Defendants are not a DEA registrant, not a licensed terminal distributor, and have no statutory authority to destroy, dispose of, or otherwise exercise sovereign control over controlled substances, their acceptance and handling of the medication constituted a proprietary function governed by private-law duties of reasonable care, including duties of secure storage, accurate recordkeeping, and proper return of unused or unusable medication to the parent.

97.     Defendants owed Plaintiffs a duty to exercise ordinary and reasonable care in the custodial handling, storage, safeguarding, and administration of John Doe's controlled substance

18

medication, consistent with the standards applicable to private custodians of controlled substances and with Ohio's school medication regulations requiring return of unused medication to the parent.

98. Defendants breached this duty by failing to exercise reasonable care in the custodial handling of the medication, including but not limited to: failing to secure the medication; failing to maintain accurate custody and administration records; failing to detect or prevent diversion and substituting of other, dangerous medications; and failing to return unused or unusable doses to Plaintiff Jane Doe.

99. As a direct and proximate result of Defendants breach of their custodial duties, substantial quantities of John Doe's controlled substance medication were diverted, misappropriated, or falsely reported as "destroyed," causing John Doe to miss prescribed doses, be given dangerous medications to consume, and suffer physical, behavioral, emotional, and educational harm.

100. Because the Defendants' custodial handling of controlled-substance medication is a proprietary function, not a governmental function under R.C. 2744.01(C), Defendants are not entitled to political subdivision immunity for their negligent performance of this private-law duty.

101. Plaintiffs suffered damages including, but not limited to damages of a personal, pecuniary, and permanent nature, including, but not limited to, serious bodily injuries, pain and suffering, mental anguish, medical expenses now and into the future, loss of enjoyment of life, and other damages to be proven at the trial of this matter.

### CLAIM SIX
Violation of Ohio Rev. Code § 2151.421
Against Defendants BOE, Harrison, Magyar, Toth, and Dirocco

102. Plaintiffs incorporate and reaver all allegations contained in each of the previous paragraphs as though fully rewritten herein.

19

103. The conduct of Kovacs, as more fully described above, caused Plaintiff John Doe to face a clear threat of suffering a physical or mental injury, disability, or condition such that it amounts to child abuse and neglect as those terms are described in Ohio Revised Code § 2151.421(A)(1)(a).

104. At all times relevant, Defendants BOE, Harrison, Magyar, Toth, and Dirocco had mandatory reporting duties under Ohio Revised Code § 2151.421 titled "Reporting child abuse or neglect."

105. Defendants BOE, Harrison, Magyar, Toth, and Dirocco's mandatory reporting duties were neither discretionary nor a matter of policy making.

106. Defendants BOE, Harrison, Magyar, Toth, and Dirocco were all aware of facts and circumstances that Kovacs was engaged in the theft of student medication and that her ongoing theft and cover up caused Plaintiff John Doe and the other children to face a clear threat of suffering a physical and/or mental injury, disability, or conditions. Defendants violated their mandatory child abuse reporting duties by failing to report to the Ohio Department of Children and Youth (and/or other child protection or law enforcement agency) the suspected medication theft and resulting child abuse and neglect on Kovacs's part.

107. Defendants BOE, Harrison, Magyar, Toth, and Dirocco knew that their violation of the Ohio Revised Code § 2151.421 would cause injury to Plaintiff John Doe and other students being administered prescription medication by Defendant Kovacs.

108. As a direct and proximate result of Defendants' violation of their mandatory child-abuse reporting duties under Ohio Revised Code § 2151.421, Plaintiff John Doe suffered damages of a personal, pecuniary, and permanent nature, including, but not limited to, serious bodily

injuries, pain and suffering, mental anguish, medical expenses now and into the future, loss of enjoyment of life, and other damages to be proven at the trial of this matter

### CLAIM SEVEN
Violation of Ohio Rev. Code § 3313.713
Against All Defendants

109.    Plaintiffs incorporate and reaver all allegations contained in each of the previous paragraphs as though fully rewritten herein.

110.    Ohio Revised Code § 3313.713 governs the administration of prescription medication to students in Ohio public schools. The statute requires, among other things: written authorization from the parent and prescribing physician; secure storage of medication; administration only by individuals designated and trained by the school district; supervision by a licensed school nurse; and compliance with all District policies adopted pursuant to the statute.

111.    Plaintiff Jane Doe provided Defendants with written authorization on behalf of Plaintiff John Doe and delivered the medication prescribed to John Doe for administration during school hours.

112.    Upon accepting the medication, the BOE and its employees assumed statutory duties under R.C. 3313.713 to ensure that the medication was: stored securely, administered only by trained and authorized personnel, administered exactly as prescribed, and supervised by Defendants BOE, Harrison, Magyar, Toth, and Dirocco.

113.    Defendants breached these statutory duties by: delegating administration of controlled substances to an unlicensed, untrained, non-medical employee; failing to provide required training; failing to maintain secure storage and chain-of-custody procedures; failing to supervise medication administration; failing to follow written authorization requirements; failing to document doses; and ignoring warning signs that medication was being mishandled.

114. Defendant Kovac's conduct, including swapping Plaintiff John Doe's ADHD medication with antidepressants, stealing John Doe's medications, altering medication trackers, and failing to document doses, occurred while she was performing duties governed by R.C. 3313.713 and in violation of its requirements.

115. These statutory violations constitute negligence per se, establishing duty and breach as a matter of law.

116. As a direct and proximate result of Defendants' violations of R.C. 3313.713 Plaintiff John Doe suffered damages of a personal, pecuniary, and permanent nature, including, but not limited to, serious bodily injuries, pain and suffering, mental anguish, medical expenses now and into the future, loss of enjoyment of life, and other damages to be proven at the trial of this matter.

117. The Individual Defendants acted recklessly and in conscious disregard of known risks, thereby losing any perceived immunity under R.C. 2744.03(A)(6).

118. Defendants' actions and inactions related to their respective duties under R.C. 3313.713, as more fully described in the preceding paragraphs, constitutes gross negligence.

119. R.C. 3313.713(E) specifically imposes liability, regardless of R.C. 2744.02, on persons that act in a manner that constitutes gross negligence or wanton or reckless conduct in administering or failing to administer a prescription drug.

### CLAIM EIGHT
Bailment
Against All Defendants

120. Plaintiffs incorporate and reaver all allegations contained in each of the previous paragraphs as though fully rewritten herein.

121.    Plaintiffs were the lawful owners of the prescribed ADHD medication, a Schedule II controlled substance purchased, possessed, and maintained by Plaintiff Jane Doe for the benefit of her minor child Plaintiff John Doe.

122.    Plaintiff Jane Doe delivered the medication, consistent with Defendants directives for doing so, for the limited purpose of administration to Plaintiff John Doe during school hours.

123.    By accepting possession of the medication, Defendants entered into a bailment relationship with Plaintiffs, thereby assuming the legal duty to safeguard the medication, maintain accurate custody and administration records, and return or account for the medication in the same quantity and condition as received.

124.    Plaintiffs fully fulfilled their obligations under the bailment by providing the medication in proper form, quantity, and packaging, and by complying with all of Defendants procedures for delivery and administration.

125.    Defendants failed to return or properly account for the bailed medication. Substantial quantities of Plaintiff John Doe's controlled-substance medication were misappropriated or otherwise not returned to Plaintiffs.

126.    Defendant Kovacs, given her access to the bailed property, repeatedly took, diverted, consumed, substituted or otherwise disposed of Plaintiffs medication while falsely representing that said doses were mishandled and could not be administered.

127.    Acting under color of state law, and controlled substance regulations, Defendants, had no legal authority to misappropriate, destroy or dispose of Plaintiffs' medication. Any damaged, dropped or otherwise unusable medication remained the property of Plaintiff Jane Doe and was required to be returned to the parent unless destruction was performed in compliance with

applicable law, including witnessed destruction, documentation, and use of authorized destruction procedures. No such lawful destruction occurred.

128. Defendants' failure to return the bailed medication, and their inability to account for the missing doses constitutes a breach of the bailment.

129. As a direct result of Defendants' failure to return the bailed property, Plaintiffs suffered damages and are entitled to compensatory damages, including but not limited to: loss of the medication; costs of replacement medication; disruption of John Doe's medical treatment; physical, behavioral, and educational harm resulting from missed or substituted doses; and other consequential damages, attorney fees, and any other relief deemed appropriate.

**CLAIM NINE**
Willful and Wanton Conduct
Defendants BOE, Harrison, Magyar, Toth and Dirocco

130. Plaintiffs incorporate and reaver all allegations contained in each of the previous paragraphs as though fully rewritten herein.

131. At all relevant times herein, Defendants BOE, Harrison, Magyar, Toth, and Dirocco owed a duty of care to all students, including Plaintiff John Doe, to refrain from willful and wanton conduct.

132. At all relevant times herein, Defendants BOE, Harrison, Magyar, Toth, and Dirocco breached said duty by committing one or more of the following willful and wanton acts and/or omissions:

    a. With an utter indifference or conscious disregard for the safety of their students, including Plaintiff John Doe, failed to properly supervise their "nursing" staff to ensure that it was safely administering proper medications at the proper doses;

    b. With an utter indifference or conscious disregard for the safety of their students, including Plaintiff John Doe, failed to properly supervise their "nursing staff", including Defendant Kovacs, to

24

ensure that it was following the district's policies and procedures regarding administration of student medications;

c. With an utter indifference or conscious disregard for the safety of their students, including Plaintiff John Doe, failed to provide sufficient oversight to the administration of student medication including but not limited to, auditing medication administration logs;

d. With an utter indifference or conscious disregard for the safety of their students, including Plaintiff John Doe, created an environment that allowed their "nurse," Defendant Kovacs, to perpetuate theft of student medication for personal use;

e. With an utter indifference or conscious disregard for the safety of their students, including Plaintiff John Doe, allowed Defendant Kovacs to continue to administer student medication when they had prior actual and/or constructive knowledge of Defendant Kovacs's involvement with missing, damaged, and misappropriated medications;

f. With an utter indifference or conscious disregard for the safety of their students, including Plaintiff John Doe, allowed Defendant Kovacs to continue to administer student medications when they had actual an/or constructive knowledge of inaccuracies and/or alterations in Defendant Kovacs's medication administration record keeping;

g. With an utter indifference or conscious disregard for the safety of their students, including Plaintiff John Doe, allowed Defendant Kovacs to continue to administer student medication when they had actual and/or constructive knowledge that Defendant Kovacs had committed multiple violations of their policies and procedures regarding administration of student medications;

h. With an utter indifference or conscious disregard for the safety of their students, including Plaintiff John Doe, failed to suspend, terminate, or otherwise discipline Defendant Kovacs for violations of their policies and procedures regarding administration of student medication; and

i. With an utter indifference or conscious disregard for the safety of their students, including Plaintiff John Doe, failed to report potential child abuse and/or neglect to the Ohio Department of Children and Youth (and/or other child protection or law enforcement agency) when they had reasonable suspicion that Defendant Kovacs's

25

actions in administering student medication put their students at risk for abuse or neglect.

133. Defendants BOE, Harrison, Magyar, Toth, and Dirocco knew that their willful and wanton misconduct created a risk of substantial harm to their students, including Plaintiffs.

134. Defendants BOE, Harrison, Magyar, Toth, and Dirocco's willful and wanton misconduct caused injury to Plaintiffs.

135. As a direct and proximate result of one or more of BOE, Harrison, Magyar, Toth, and Dirocco's willful and wanton acts and/or omissions, Plaintiffs suffered injuries of a personal and pecuniary nature including, but not limited to, hospital, medical and related expenses, disability, pain and suffering, and physical and emotional trauma and has become obligated for treatment and other expenses.

### CLAIM TEN
Intentional Infliction of Emotional Distress
Against Defendant Kovacs

136. Plaintiffs incorporate and reaver all allegations contained in each of the previous paragraphs as though fully rewritten herein.

137. Defendant Kovacs' conduct, as detailed in paragraphs 12-59, including, but not limited to her conduct in intentionally diverting, stealing and misappropriating the controlled-substance medication for her own use or for an unauthorized purpose and then administering unprescribed anti-depressant medications in lieu of John Doe's prescribed medication, without medical justification or parental consent, constitutes conduct that was extreme and outrageous, exceeding all possible bounds of decency.

138. The emotional distress suffered by Plaintiff John Doe is serious, severe, and of a nature that no reasonable person should be expected to endure.

139.    Defendant Kovacs engaged in this conduct intentionally, knowingly, and with conscious disregard for the extreme emotional harm such conduct would cause to John Doe and with great probability of causing substantial harm.

140.    As a direct and proximate result of Defendant Kovacs' conduct, Plaintiff John Doe suffered severe emotional distress, including but not limited to fear, anxiety, loss of trust in medical and school personnel, behavioral regression, and ongoing psychological harm requiring treatment.

141.    Defendant Kovacs is liable for all damages permitted under Ohio law for intentional infliction of emotional distress, including compensatory damages, emotional-distress damages, medical and psychological treatment expenses, and punitive damages due to the malicious, intentional, and reckless nature of her conduct and the conscious disregard for the rights and safety of Plaintiff John Doe.

## **DEMAND FOR JUDGMENT**

WHEREFORE, Plaintiffs pray for relief as follows:

1. A declaration that the acts and conduct of all Defendants constitute violations of Plaintiffs' constitutional, statutory and common-law rights;

2. Judgment in favor of Plaintiffs against all Defendants, jointly and severally, for an appropriate amount of compensatory damages;

3. An award to Plaintiffs against all Defendants, jointly and severally, of appropriate court costs and legal expenses, including reasonable attorney fees; and

4. An award to Plaintiff John Doe against Defendant Danielle Kovacs for an appropriate amount of compensatory damages, punitive damages, costs, legal expenses, including reasonable attorney fees relative to her intentional infliction of emotional distress; and

5. An award to Plaintiffs for any other relief the court deems appropriate.

## JURY DEMAND

Plaintiffs demand trial by jury.

Respectfully submitted,


 */s/ Michael W. Czack*
MICHAEL W. CZACK (0034000)
THOMAS J. HOBBS (0098446)
**THE CZACK HOBBS LAW FIRM**
6500 Rockside Road, Suite 300
Independence, OH 44131
P: (216) 696-9216
F: (216) 771-7703
E: mczack@czacklaw.com
    tom@czacklaw.com

ERIC TAYFEL (0068222)
**TAYFEL & ASSOCIATES, LLC**
1370 West 6th Street, Suite 300
Cleveland, OH 44113
P: (216) 443-0550
F: (216) 443-0558
E: etayfel@tayfellaw.com

Attorneys for Plaintiffs

28